# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Howard and Sharon Phillips
1804 County Road M
Swanton, Ohio 43558

and

Joy Phillips
1804 County Road M
Swanton, Ohio 43558

and

David Phillips
960 Seven Ponds Towd Road
Southampton, New York 11968

and

Kenneth A. and Judith G. Hale
600 Enterprise Avenue
Wauseon, Ohio 43567

and

Roxanna Holliker
600 Enterprise Avenue
Wauseon, Ohio 43567

and

Timothy Coley
209 Woodland Avenue
Swanton, Ohio 43558

and

Case No. _____

**VERIFIED COMPLAINT
JURY DEMAND DEMANDED**

Leesa Coley
209 Woodland Avenue
Swanton, Ohio 43558

      Plaintiffs,

v.

Trevor Cook
12644 Tiffany Court, Suite 100
Burnsville, Minnesota 55337

and

Gerald Durand
20520 Keokuk Ave., Suite 204
Lakeville, MN 55044

and

Oxford Global Partners
1900 LaSalle Avenue
Minneapolis, Minnesota

and

Oxford Global Advisors
1900 LaSalle Avenue
Minneapolis, Minnesota

and

Oxford Private Client Group
1900 LaSalle Avenue
Minneapolis, Minnesota

and

UBFX Diversified
12644 Tiffany Court, Suite 100
Burnsville, Minnesota 55337

and

UBS Diversified
12644 Tiffany Court, Suite 100
Burnsville, Minnesota 55337

and

Universal Brokerage FX
12644 Tiffany Court, Suite 100
Burnsville, Minnesota 55337

and

UBS Diversified FX Advisors, LLC
12644 Tiffany Court, Suite 100
Burnsville, Minnesota 55337

and

UBS Diversified FX Growth LP
12644 Tiffany Court, Suite 100
Burnsville, Minnesota 55337

and

UBS Diversified FX Management, LLC
12644 Tiffany Court, Suite 100
Burnsville, Minnesota 55337

and

UBS Diversified Growth, LLC
12644 Tiffany Court, Suite 100
Burnsville, Minnesota 55337

and

Universal Brokerage Services, LLC
12644 Tiffany Court, Suite 100
Burnsville, Minnesota 55337

and

UBS REFCO IFX Millennium RJO PRG
12644 Tiffany Court, Suite 100
Burnsville, Minnesota 55337

Defendants.

---

## I.   PARTIES AND OTHER INVOLVED PERSONS

### A.   Plaintiffs

1.      The Plaintiffs in this case are two extended families and their pastor who live in small, rural towns in Northwest Ohio (with one plaintiff family member in New York). Lured by Gerald Durand's radio investment show, these individuals invested their life savings, close to $5 million, with Mr. Durand, his partner Mr. Cook, and their companies.

2.      Plaintiffs Howard and Sharon Phillips live at 1804 County Road M, Swanton, Ohio, 43558, a rural town outside of Toledo, Ohio. Howard Phillips is retired as a result of a disability, and Sharon Phillips is a housewife. Howard Phillips is also being treated aggressively for metastatic prostate cancer.

3.      Plaintiff Joy Phillips is the twenty-two year old daughter of Howard and Sharon Phillips. She lives with her parents at 1804 County Road M, Swanton, Ohio, 43558.

4.     Plaintiff David Phillips lives at 960 Seven Ponds Towd Road; Southampton, New York, 11968.  He also maintains a residence at R.R.-3 Box 327, Pennington Gap, Virginia, 24277.  He is retired with a disability.

5.     Plaintiffs Kenneth A. and Judith G. Hale live at 600 Enterprise Avenue, Wauseon, Ohio, 43567, a rural town outside of Toledo, Ohio.

6.     Plaintiff Roxanna Holliker is the daughter of Kenneth and Judith Hale.  She lives with her parents at 600 Enterprise Avenue, Wauseon, Ohio 43567.

7.     Plaintiffs Timothy and Leesa Coley live at 209 Woodland Avenue, Swanton, Ohio, 43558.  Timothy Coley is the Pastor at Bethany Baptist Church, Grand Rapids, Ohio.

## B.     Defendants Cook and Durand

8.     Defendant Trevor Cook represents to the public that he is an investment advisor and/or wealth manager providing financial products and investment opportunities.   Upon information and belief, Cook is the Chief Investment Director/Managing Partner at Oxford Global Partners, and the Chief Investment Director at Oxford Global Advisors.  A copy of Cook's business cards is attached as Exhibit A.  Upon information and belief, Cook is either an owner or employee or otherwise affiliated with UBFX Diversified, UBS Diversified, Universal Brokerage FX.

9.     Defendant Gerald Durand has a radio show on investments, and represents to the public that he is an investment advisor and/or wealth manager providing financial products and investment opportunities.   On information and belief, he is currently Managing Director of Wealth Survival.  On information and belief, Durand is or was the

Principal of Oxford Global Advisors. A copy of Durand's business cards is attached as Exhibit A. He also holds himself out as affiliated with UBS, Saxo, Refco, IFX, Millenium, RJO, PFG, and Chase. A copy of a letter from him on his letterhead is attached as Exhibit B.

**C.**     **The Oxford Defendants**

10. Defendant Oxford Global Partners is located at 1900 LaSalle Avenue, Minneapolis, Minnesota.

11. Defendant Oxford Global Advisors is located at 1900 LaSalle Avenue, Minneapolis, Minnesota.

12. Upon information and belief, Defendant Oxford Private Client Group is affiliated with Oxford Global Partners or Oxford Global Advisors. The three Oxford Defendants shall be referred to as the "Oxford Companies."

**D.**     **The UB Defendants**

13. Defendant UBFX Diversified is located at 12644 Tiffany Ct., Suite 100, Burnsville, Minnesota, 55337.

14. Defendant UBS Diversified is located at 12644 Tiffany Ct., Suite 100, Burnsville, Minnesota, 55337.

15. Defendant Universal Brokerage FX is located at 12644 Tiffany Ct., Suite 100, Burnsville, Minnesota, 55337.

16. Upon information and belief, Defendant UBS Diversified FX Advisors, LLC is a predecessor, related entity or otherwise affiliated with UBFX Diversified, UBS Diversified, or Universal Brokerage FX.

17.     Upon information and belief, Defendant UBS Diversified FX Growth LP is a predecessor, related entity or otherwise affiliated with UBFX Diversified, UBS Diversified, or Universal Brokerage FX.

18.     Upon information and belief, Defendant UBS Diversified FX Management, LLC is a predecessor, related entity or otherwise affiliated with UBFX Diversified, UBS Diversified, or Universal Brokerage FX.

19.     Upon information and belief, Defendant UBS Diversified Growth, LLC is a predecessor, related entity or otherwise affiliated with UBFX Diversified, UBS Diversified, or Universal Broker FX.

20.     Upon information and belief, Defendant Universal Brokerage Services, LLC is a predecessor, related entity or otherwise affiliated with UBFX Diversified, UBS Diversified, or Universal Brokerage FX.

21.     Upon information and belief, Defendant UBS REFCO IFX Millennium RJO PRG is a predecessor, related entity or otherwise affiliated with UBFX Diversified, UBS Diversified, or Universal Brokerage FX.  The UB Defendants shall be referred to as the "UB Companies."

**E.     Other involved individuals**

22.     Upon information and belief, Jason Alan Bo Beckman is a principal, partner, owner, employee or otherwise affiliated with UBFX Diversified, UBS Diversified, Universal Brokerage FX, Oxford Global Partners, Oxford Global Advisors, or Oxford Private Client Group, or their related entities.  Upon further information and

belief, Beckman is associated with the Oxford Private Group, which is located at the same address as Oxford Global Partners and Oxford Global Advisors.

23.    Patrick Kiley has signed the checks that Plaintiffs received from Defendants as distributions.  Upon information and belief, Kiley is a partner or employee or otherwise affiliated with UBFX Diversified, UBS Diversified, or Universal Brokerage FX, Oxford Global Partners, Oxford Global Advisors, Oxford Private Client Group, or their related entities.   Minnesota Secretary of State records indicate that Kiley is identified as an agent for a number of inactive entities at the same address as UBS Diversified and UBFX (i.e., UBS Diversified FX Growth, L.P.); (2) UBS Diversified FX Advisors, L.L.C.; and (3) UBS Diversified FX Management, L.L.C.

24.    Upon information and belief, Tom Richardson is a principal, partner, owner, employee or otherwise affiliated with UBFX Diversified, UBS Diversified, Universal Brokerage FX, Oxford Global Partners, Oxford Global Advisors, Oxford Private Client Group, or their related entities.

## II.    FACTUAL BACKGROUND

25.    Gerald Durand had a radio show in which he speaks about investment opportunities and the economy.

26.    In February 2006, after listening to Durand's investment radio show, Kenneth Hale invested money with Durand for Durand to invest in currency arbitrage.

27.    Later that year, Durand told Hale that Durand and Cook would be traveling through Northwest Ohio.  Hale invited Durand and Cook to come to the Hales' home in

Wauseon, Ohio, to discuss his investment opportunities with Hale and others that Hale invited to Hale's home. Durand accepted Hale's invitation.

28.   In April 2006, Durand came to the Hales' home to make the investment presentation.

29.   Cook accompanied and assisted Durand in making this presentation.

30.   Howard and Sharon Phillips, among others, attended Durand and Cook's presentation.

31.   Following Durand and Cook's April 2006 presentation at the Hale's home, Howard Phillips informed his brother David Phillips of the opportunity to invest with Durand. They also informed their adult daughter, Joy Phillips, of the opportunity.

32.   Kenneth Hale also informed his adult daughter, Roxanna Holliker, and Pastor Coley about the opportunity to invest with Durand.

33.   Kenneth and Judith Hale, their daughter Roxanna Holliker, Howard and Sharon Phillips, their daughter Joy Phillips, David Phillips, and Pastor Coley all eventually invested with Durand and Cook.

34.   In early 2007, Durand and Cook told Plaintiffs about a currency arbitrage investment that would provide a fixed 12% return, over one year, with the principal protected, and that would be instantly liquid if anyone wanted to redeem their investment (the "First Liquid Fixed-Return Investment"). A copy of the offering for the First Liquid Fixed-Return Investment is attached as Exhibit C.

35.   Plaintiffs agreed to invest with Durand and Cook in the First Liquid Fixed-Return Investment.

36.    At some point after the year expired on the First Liquid Fixed-Return Investment, Durand and/or Cook placed Plaintiffs in the same currency arbitrage investment with the principal protected and that would be instantly liquid if anyone wanted to redeem their investment, except that that the fixed rate of return would 10.5% for a four-year term (the "Second Liquid Fixed-Return Investment").

37.    Durand recommended the Second Liquid Fixed-Return Investment to the Hales, and then placed them in it.  Durand and or Cook placed the other Plaintiffs in the Second Liquid Fixed-Return Investment without those Plaintiffs' knowledge.  In March, 2008, around the time the First Liquid Fixed-Return Investment was supposed to expire, Sharon Phillips e-mailed Durand and Cook to find out what their investment options were following expiration of the investment.    Durand and Cook failed to respond. Subsequently, the Phillips received a statement showing that all their funds were invested in a 10.5% investment.  Sharon Phillips called Durand and Cook for an explanation. Cook took the call and explained that "We discussed this and felt this would be best for you." Sharon Phillips understood "we" to refer to Durand and Cook.

38.    Plaintiffs invested close to $5 million with Durand and Cook in the Second Liquid Fixed-Return Investment.

39.    On information and belief, Durand and Cook purported to place Plaintiffs' investment with UBS Diversified, Universal Brokerage FX, UBFX Diversified, or UBFX Brokerage FX or their predecessors, or related or otherwise affiliated entities.  Plaintiffs initially received statements from UBS Diversified, and then the statements indicated they were from Universal Brokerage FX.

40.     In making contributions to their accounts, Plaintiffs have made checks payable to UBS Diversified or Universal Brokerage FX.

41.     Checks made payable to UBS Diversified were then stamped "Pay to the Order of Wells Fargo Bank, N.A." and "For Deposit Only." The Wells Fargo bank account number appears to be 3036172710. A copy of certain checks is attached as Exhibit D.

42.     A check made payable to Universal Brokerage FX appears to have been deposited into the same Wells Fargo bank account listed in Paragraph 41. A copy of this check is included in Exhibit D.

43.     Kenneth Hale invested money that was kept with Millennium Trust Co., account #90-L-286-01-1. Judy Hale's account number with Millenium is 90-M108-01-6.

44.     Pastor Coley invested money that was kept with Millenium Trust Co., account #31465.

45.     Plaintiffs believed that Durand was managing their accounts, and that Cook was assisting him. In mid-2008, however, Plaintiffs had not heard from Durand for some time, which prompted Sharon Phillips to e-mail Cook in July 2008 regarding Durand's whereabouts. Cook responded that Durand "has been traveling extensively and has decided to take some time off. He will be working out of his home for awhile and may not be accessible on a weekly basis."

46.     In summer 2008, Durand spoke with Kenneth Hale. Durand informed Kenneth Hale that Durand was no longer with his former company or associated with Cook.

47.    During the Second Liquid Fixed-Return Investment, UBFX had been paying Howard and Sharon Phillips $2500 a month from the returns on the investment. The regular monthly withdrawals were paid by check all of which were signed by Patrick Kiley.

48.    In April 2009, in addition to the regular monthly $2,500 withdrawal, Howard and Sharon Phillips contacted Cook to withdraw $450,000 from their account(s) to purchase a farm and to pay certain taxes. In early May, they increased the amount of the request to $650,000.

49.    In response to Howard and Sharon Phillips' request, Cook first indicated there could be significant fees and penalties. Cook then told Howard and Sharon Phillips that he could avoid the fees and penalties, but there would be substantial taxes due. Howard and Sharon Phillips then informed Cook that they were not going to purchase the property, and that Howard Phillips was experiencing health issues.

50.    On May 21, 2009, Sharon Phillips informed Cook that they would need $50,000 in addition to the regular $2,500 monthly check. Cook did process that request.

51.    On June 4, 2009, Durand called David Phillips to inform him that Durand had heard that a large sum of money invested with Cook was missing, that an investigation would be forthcoming in approximately three months, and that David should redeem all accounts right away or David would not be able to get his money out.

52.    On June 4, 2009, David Phillips requested that Cook withdraw $500,000 from his account with Cook. Cook said he would wire the money, but never did.

53.    On June 4, David Phillips told Howard and Sharon Phillips about the message from Durand.  Howard and Sharon Phillips then contacted Cook to close all their accounts and return their money.  Cook inquired as to why they wanted their money.  Howard Phillips told him that one reason was that Howard felt deceived because Cook had misled the Phillips by not telling them that Durand had left the firm.  Cook replied that Durand was still with the firm, and was receiving a paycheck.  Cook even offered to call Durand and they would have a 3-way conversation to reassure them.  Knowing of David Phillips' conversation with Durand, the Phillips declined and asked Cook to return all their money.  That same day, Sharon Phillips called Durand and told him what Cook said.  Durand said that Cook was wrong, that Durand had left in June 2008, that he walked away from millions of dollars of client accounts because of differences with Cook, and that Cook was paying Durand severance but not a paycheck.

54.    On June 11, 2009, David Phillips left a message with Cook to fully close his account and return all his money.  Cook has never responded and is now unreachable.

55.    Cook initially told Howard and Sharon Phillips that he was obtaining the necessary forms for them to close out their accounts.  Cook, however, has not sent out any forms or processed any of the Phillips' requests to close their accounts.

56.    The Phillips and their counsel have repeatedly tried to contact Cook since mid-June 2009 to demand that Cook return the Phillips' money, but Cook does not respond.

57.    After the Phillips requested that Cook return their money, Cook met with Durand and requested Durand to ask the Phillips not to demand return of their money. Durand told the Phillips of this conversation.

58.    On June 24, 2009, Kenneth and Judith Hale attempted to contact Cook by e-mail and telephone to close all of their accounts.  The Hales have repeatedly tried to contact Cook since then, but Cook has not returned any of their communications.

59.    Upon information and belief, Durand and Kiley have information regarding the whereabouts of Plaintiffs' accounts and funds.

60.    Plaintiffs' representatives have attempted to speak to Kiley.  While he initially spoke to Plaintiffs' representative, he did not disclose any information as to the location of Plaintiffs' accounts and now refuses to return telephone calls.

61.    Durand has spoken to Plaintiffs and Plaintiffs' representatives, but has said only that Plaintiffs should contact Cook about return of their money.

62.    Pastor Coley, Roxanna Holliker, and Joy Phillips have asked Cook to return their money, but he has not done so.

63.    According to Universal Brokerage FX statements, Howard and Sharon Phillips's accounts are worth approximately $2 million.

64.    According to Universal Brokerage FX statements, David Phillips accounts are worth approximately $1.4 million.

65.    According to Universal Brokerage FX statements, Kenneth and Judith Hale's account is worth in excess of $1.1 million.

66.     According to Universal Brokerage FX statements, Joy Phillips' account is worth in excess of $29,000.

67.     According to Universal Brokerage FX statements, Roxanna Holliker's account is worth in excess of $190,000.00.

68.     According to Universal Brokerage FX statements, Pastor and Leesa Coley's account is worth in excess of $20,000.

69.     On July 6, 2009, Wells Fargo was contacted by Plaintiffs' counsel regarding Account #3036172710, referenced in Paragraph 41. Wells Fargo indicated that the account is open and active, but would not freeze the account.

70.     Plaintiffs are in the process of enlisting their respective financial institutions to notify Wells Fargo and Millennium Trust of the potential fraud.

71.     On July 6, 2009, Plaintiffs' counsel contacted a reference provided by Durand in a solicitation letter named Sally Zimmerman. Ms. Zimmerman indicated that she had done some tax work for investors with Durand in the past, but stopped doing this work because of unspecified concerns. She also indicated that the FBI had contacted her regarding Durand but declined to provide more information.

## COUNT I
### (Breach of Contract)

72.     Plaintiffs restate paragraphs 1 through 71 of this Verified Complaint.

73.     In soliciting and accepting Plaintiffs' investments, Cook and Durand were acting as agents for themselves and for the UB Companies and the Oxford Companies.

74.    Defendants have breached their contract(s) with Plaintiffs to pay the fixed return on the Second Liquid Fixed-Return Investment, and to liquidate the investment instantly upon request.

75.    Defendants' actions and omissions have caused Plaintiffs to incur approximately $5 million in damages.

## COUNT II
### (Fraud)

76.    Plaintiffs restate paragraphs 1 through 75 of this Verified Complaint.

77.    Durand and Cook, for themselves and as agents of the UB Companies and the Oxford Companies, knowingly misrepresented to Plaintiffs the terms of the First and Second Liquid Fixed-Return Investments.   Specifically, Defendants falsely represented that the investments had a fixed rate of return, that Plaintiffs' principal was protected, and that the investments were instantly liquid.   In fact, the investments are highly speculative, Plaintiffs' principal has not been protected, and the investments are not liquid.

78.    Plaintiffs justifiably relied on these misrepresentations to their detriment.

79.    Defendants' fraudulent conduct has caused Plaintiffs to incur approximately $5 million in damages.

## COUNT III
### (Minn. Stat. § 80A.68)

80.    Plaintiffs restate paragraphs 1 through 79 of this Verified Complaint.

81.    Durand and Cook, for themselves and as agents of the UB Companies and the Oxford Companies, violated Minn. Stat. § 80A.68 by employing devices, schemes and artifices to defraud; making untrue statements of material facts or

omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and engaging in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff in connection with the sale to Plaintiffs of foreign currency arbitrage investments.

82.     Plaintiffs reasonably relied on Defendants' representations regarding the First and Second Liquid Fixed-Return Investments, including the fixed interest return, their principal being protected, and the investment being instantly liquid, and Plaintiffs would not have made the investment if Defendants had truthfully represented all material facts.

83.     Defendants either knew or recklessly disregarded that their representations were materially inaccurate and omitted material information, and that their misrepresentations and omissions would mislead Plaintiffs.

84.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered approximately $5 million in damages.

## COUNT IV
### (Minn. Stat. § 80A.69)

85.     Plaintiffs restate paragraphs 1 through 84 of this Verified Complaint.

86.     Durand and Cook, for themselves and as agents of the UB Companies and the Oxford Companies, provided investment advice to Plaintiffs as to the advisability of investing in or purchasing the First and Second Liquid Fixed-Return Investments.

87.     Defendants received compensation for the investment advice provided to Plaintiffs.

88.     In providing advice to Plaintiffs, Defendants employed a device, scheme, or artifice to defraud Plaintiffs, and/or engaged in an act, practice or course of business that operated as a fraud or deceit upon Plaintiffs in connection with the sale to Plaintiffs of the foreign currency arbitrage investments.

89.     Plaintiffs reasonably relied on Defendants' representations regarding the fixed interest return, their principal being protected, and the investment being instantly liquid, and Plaintiffs would not have made the investment if Defendants had truthfully represented all material facts.

90.     Defendants either knew or recklessly disregarded that their representations were materially inaccurate and omitted material information, and that their misrepresentations and omissions would mislead Plaintiffs.

91.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered approximately $5 million in damages.

## COUNT V
### (Negligent Misrepresentation)

92.     Plaintiffs restate paragraphs 1 through 91 of this Verified Complaint.

93.     Defendants supplied false information to Plaintiffs regarding their investments.   Defendants knew and intended that Plaintiffs would rely on the information.

94.     Defendants failed to exercise reasonable care or competence in communicating the investment information to Plaintiffs.

95.     Plaintiffs justifiably relied on the information Defendants supplied regarding the investments.

96.     As a proximate result of Defendants' misrepresentations, Plaintiffs suffered approximately $5 million in losses.

**COUNT VI**
**(Conversion)**

97.     Plaintiffs restate paragraphs 1 through 96 of this Verified Complaint

98.     Defendants continued use of Plaintiffs' funds and failure to return Plaintiffs' funds following Plaintiffs' request for return of all their funds represents an intentional conversion of Plaintiffs' property rights by wrongful use, act or disposition of Plaintiffs' funds that has proximately caused serious interference with Plaintiffs' property rights.

99.     Plaintiffs have been damaged and will continue to be damaged by Defendants' wrongful conversion of Plaintiffs' funds and other property in an amount of approximately $5 million.

**COUNT VII**
**(Minnesota Consumer Fraud: Minn. Stat. § 325F.69)**

100.    Plaintiffs restate paragraphs 1 through 99 of this Verified Complaint.

101.    Durand and Cook, for themselves and as agents for the UB Companies and the Oxford Companies, employed fraud, false pretense, false promise, misrepresentation, misleading statements and/or deceptive trade practices in soliciting Plaintiffs to purchase the above-referenced investments, in violation of Minn. Stat. § 325F.69

102.   Plaintiffs were misled, deceived, and damaged thereby in an amount of approximately $5 million.

## COUNT VIII
### (Minnesota Deceptive Trade Practices Act: Minn. Stat. § 325D.44)

103.   Plaintiffs restate paragraph 1 through 102 of this Verified Complaint.

104.   Defendants engaged in deceptive trade practices in violation of Minn. Stat. § 325D.44 through their actions in (1) representing that the investments had characteristics, uses, and benefits that they do not have; (2) advertising the investments with the intent not to sell them as advertised; (3) making or allowing to be made statements that were likely to cause confusion or misunderstanding as to the Defendants' affiliations, connections, or associations with the investments; and (4) engaged in other conduct which created a likelihood of confusion or misunderstanding relating to the investments.

105.   Defendants willfully engaged in such trade practices knowing them to be deceptive.

106.   Plaintiffs were damaged by these violations, and are entitled to recover their actual damages in an amount of approximately $5 million, plus attorneys' fees and costs from Defendants pursuant to Minn. Stat. § 325D.45.

## COUNT IX
### (Breach of Fiduciary Duty)

107.   Plaintiffs restate paragraphs 1 through 106 of this Verified Complaint.

108.   Defendants owed Plaintiffs fiduciary duties and obligations in their capacity as investment advisors.

109.   Defendants' fiduciary obligations to Plaintiffs included (1) the duty to accurately inform Plaintiffs about the investments; (2) the duty to supervise and manage Plaintiffs' accounts and investments with reasonable care; (3) the duty to keep Plaintiffs fully advised as to the condition of their investments, and not mislead Plaintiffs as to their status; (4) refrain from acting in self-interest at the expense of Plaintiffs; (5) the duty not to misrepresent any material facts related to Plaintiffs' investments or accounts; and (6) the duty to adequately supervise those managing Plaintiffs' accounts and investments.

110.   Defendants breached their fiduciary duties owed to Plaintiffs by misrepresenting the nature of the investments, misappropriating funds entrusted to them for investments, concealing these breaches from Plaintiffs, and failing to provide adequate supervision.

111.   As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiffs have been damages in an amount of approximately $5 million.

## RELIEF REQUESTED

Plaintiffs respectfully request that the Court:

A.     Issue a Temporary Restraining Order preserving the status quo by ordering Wells Fargo Bank, N.A. to freeze any account belonging to any Defendants up to $5 million, including but not limited to account number 3036172710.

B.     Issue a Temporary Restraining Order preserving the status quo by ordering Millenium Trust Company to freeze any account belonging to any Plaintiff, including Kenneth Hale's account #90-L-286-01-1, Judy Hales account #90-M108-01-6, and Pastor Coley's account #31465.

C.     Issue a Temporary Restraining Order ordering that Defendants not dispose of the property or funds in Plaintiffs' accounts with Defendants or any entity over which Defendants exercise any control.

D.     Issue a Temporary Restraining Order ordering that Defendants not dispose of any of Defendants' property or funds in which Plaintiffs hold any form of interest.

E.     Issue a Preliminary and Permanent Injunction ordering that Defendants not dispose of the property or funds in Plaintiffs' accounts with Defendants, or any entity over which Defendants exercise any control.

F.     Issue a Preliminary and Permanent Injunction pursuant to Civil Rule 65 ordering that Defendants not dispose of any of Defendants' property or funds in which Plaintiffs hold any form of interest.

G.     Award Plaintiffs compensatory damages, reasonable attorneys' fees, and pre-judgment interest based on Defendants' breach, fraud, conversion, and statutory violations.

H.     Award Plaintiffs such other or further relief as is just and equitable.

Dated:  July 7, 2009                    **KRASS MONROE, P.A.**


 s/ John Harper III

John Harper III
Molly R. Hamilton
8000 Norman Center Drive, Suite 1000
Minneapolis, MN 55437-1178
Telephone:  (952) 885-5999

and

**SHUMAKER, LOOP & KENDRICK,
LLP**
Peter R. Silverman
Michael J. Podolsky
1000 Jackson Street
Toledo, OH   43624
Telephone: (419) 241-9000

Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

                                    s/ John Harper III

                                    John Harper III

                                    Molly R. Hamilton

                                    Krass Monroe, P.A.

                                    Attorneys for Plaintiffs

## VERIFICATION

As to paragraphs 2, 8-9, 22-24, 25, 28-31, 33-37, 39-42, 45, 47-50, 53, 55-57, and 63 of the Verified Complaint, I, Howard Phillips, verify under penalty of perjury that the factual averments in these paragraphs are true or, if averred on information and belief, are true to the best of my information and belief based on my information and the investigation by my counsel.

_Howard Phillips_
Howard Phillips


STATE OF OHIO            )
                         ) ss:
COUNTY OF LUCAS          )

Sworn to before me and subscribed in my presence this 1st day of July, 2009.

_Pat R. Su_
Notary Public

My notary has no expiration date

**VERIFICATION**

As to paragraphs 2, 8-9, 22-24, 25, 28-31, 33-37, 39-42, 45, 47-50, 53, 55-57, and

63 of the Verified Complaint, I, Sharon Phillips, verify under penalty of perjury that the factual

averments in these paragraphs are true or, if averred on information and belief, are true to the

best of my information and belief based on my information and the investigation by my counsel.

*Sharon Phillips*
Sharon Phillips

STATE OF OHIO          )
                       ) ss:
COUNTY OF LUCAS        )

Sworn to before me and subscribed in my presence this 1st day of July, 2009.

Notary Public

*My notary has no expiration date*

## VERIFICATION

As to paragraphs 5, 8-9, 22, 25-30, 32-34, 39-40, 43, 46, 58, and 65 of the Verified Complaint I, Judith Hale, verify under penalty of perjury that the factual averments in these paragraphs are true or, if averred on information and belief, are true to the best of my information and belief based on my information and the investigation by my counsel.

_Judith Hale_
Judith Hale

STATE OF OHIO          )
                       ) ss:
COUNTY OF LUCAS        )

Sworn to before me and subscribed in my presence this 1st day of July, 2009.

_Notary signature_
Notary Public

My notary has no expiration date

## VERIFICATION

As to paragraphs 6, 33, 35-36, 62, and 67 of the Verified Complaint, I, Roxanna Holliker, verify under penalty of perjury that the factual averments in these paragraphs are true or, if averred on information and belief, are true to the best of my information and belief based on my information and the investigation by my counsel.

_Roxanna Holliker_
Roxanna Holliker


STATE OF OHIO )
        ) ss:
COUNTY OF LUCAS )

Sworn to before me and subscribed in my presence this 1st ____ day of July, 2009.

_____
Notary Public

*My notary has no expiration date.*

## **VERIFICATION**

As to paragraphs 3, 33, 35-36, 62, and 66 of the Verified Complaint, I, Joy Phillips, verify under penalty of perjury that the factual averments of these paragraphs are true or, if averred on information and belief, are true to the best of my information and belief based on my information and the investigation by my counsel.

_____
Joy Phillips

STATE OF OHIO          )
                       ) ss:
COUNTY OF LUCAS        )

Sworn to before me and subscribed in my presence this 1st day of July, 2009.

_____
Notary Public

My notary has no expiration date

20

## VERIFICATION

As to paragraphs 7, 32-33, 35, 44, and 62 of the Verified Complaint  I, Timothy Coley, verify under penalty of perjury that the factual averments of these paragraphs are true or, if averred on information and belief, are true to the best of my information and belief based on my information and the investigation by my counsel.

_Timothy Coley_
Timothy Coley


STATE OF OHIO            )
                         ) ss:
COUNTY OF LUCAS          )

Sworn to before me and subscribed in my presence this _1ST_ day of July, 2009.

_Peter R. Silverman_
Notary Public

My notary has no expiration date.

24

## VERIFICATION

As to paragraphs 5, 8-9, 22, 24, 25-30, 32-36, 39-40, 43, 46, 58, and 65 of the Verified Complaint, I, Kenneth A. Hale, verify under penalty of perjury that factual averments of these paragraphs are true or, if averred on information and belief, are true to the best of my information and belief based on my information and the investigation by my counsel.

*Kenneth A. Hale*

Kenneth A. Hale

STATE OF OHIO )
) ss:
COUNTY OF LUCAS )

Sworn to before me and subscribed in my presence this 1st day of July, 2009.

*Pat R. Silver*

Notary Public

*My notary has no expiration date.*