# MESSERLI & KRAMER

March 25, 2010

Messerli & Kramer P.A.
ATTORNEYS AT LAW
1400 Fifth Street Towers
100 South Fifth Street
Minneapolis, MN 55402-1217

phone 612.672.3600
fax 612.672.3777
messerlikramer.com

Additional offices in:
St. Paul & Plymouth, MN

The Honorable Chief Judge Michael J. Davis
United States District Court
U.S. Courthouse
300 South Fourth Street, Suite 15E
Minneapolis, MN  55415

Writer's contact:

(612) 672-3672
mhamilton@messerlikramer.com

Re:   **Phillips et al v. Cook et al**
      **Court File No. 09-cv-3332  MJD/JJK**
      **Court File No. 09-cv-3333  MJD/JJK**
      **Court File No. 09-cv-1732  MJD/JJK**
      **Our File No.  18641-1**

Dear Chief Judge Davis:

Thank you for granting leave to submit this response to the Receiver's Motion to Approve the Payment of Fees, 09-CV-3332, Docket No. 234.

On behalf of 135 defrauded investors who invested nearly $35 million with Trevor Cook and Patrick Kiley, I greatly appreciate the opportunity to express their collective concern regarding the extensive fees and costs being paid from the Receivership Estate. As the Receiver has indicated that investors are likely to receive mere "pennies on the dollar" from the funds recovered by the Receiver, the continued dissipation of those funds is understandably disconcerting. Given that approximately $1 million has been spent from the investor fund in fewer than four months and few new assets have been publicly identified, my clients have a legitimate fear that they will not even receive a minimal disbursement. Such a result would truly be a tragedy given the victimization that investors have already experienced.

The concern over the substantial fees and costs paid from the Receivership Estate is not a criticism of the work performed by the Receiver and his agents. Indeed, we are not privy to the detailed billings and statements provided by the Receiver, nor have investors been provided specific information regarding what, if any, progress has been made in locating, attaching and recovering new assets to augment the Receivership Estate.

Rather, the purpose of this submission is to respectfully raise investor concerns regarding the dwindling investor fund; request that investors be provided more detailed information regarding the Receiver's progress; and to encourage those tasked with protecting investor interests to be cognizant of the goal of maximizing recovery while minimizing loss, to remain vigilant against diminished returns, to carefully consider the cost-benefit analysis of continuing the receivership,


Added dimension

The Honorable Michael J. Davis

Page 2

and to promptly wind down the affairs of the receivership estate when the search for assets becomes unprofitable or futile.  See, e.g., S.E.C. v. Aquacell Batteries, Inc., 2008 WL 276026, *5 (M.D. Fla. Jan. 31, 2008) ("The goal [of a receivership] is not to recover every last asset no matter what, but to manage the estate in such a way as to maximize recovery while minimizing loss, including losses caused by attorney's fees…[O]nce it became clear that asset recovery was going to be limited, the goal of good stewardship shifts from the continued expenditure of limited funds in an effort to obtain any asset, to preserving as much of the estate as possible, for distribution to the investors."); S.E.C. v. Northshore Asset Mgmt., 2009 WL 3122608, *2-3 (S.D.N.Y. Sept. 29, 2009) (noting that, "[s]adly it appears that Northshore's investors would have been better off if the Receiver had simply distributed the $15.4 million on deposit and promptly wound down the affairs of the receivership estate," and advising that "[a] fundamental cost/benefit analysis could avoid awkward outcomes where a receiver's fees swallow the estate"); Bowersock Milles & Power Co., 101 F.2d 1000, 1004 (8th Cir. 1939) ("When [the receiver] first discovered the probable insufficiency of the assets, he should, upon notice to the appellant, have applied to the court for instructions as to whether to continue his operations at the cost of the appellant or to terminate the receivership and put an end to further expense…There is no justification for maintaining an unprofitable and futile receivership, and, ordinarily, a court may not charge the expense of such a receivership against anyone.").

Again, we appreciate the opportunity to be heard on this matter and remain optimistic that the best interests of each and every investor are being served and protected.

Very truly yours,

MESSERLI & KRAMER P.A.

Molly R. Hamilton
Attorney

:mrh

831040.1